IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 3, 2014

## STATE OF TENNESSEE v. CALEB LAWRENCE MULLINS

**Appeal from the Circuit Court for Madison County**
**No. 13-256      Donald H. Allen, Judge**

_____

**No. W2013-02691-CCA-R3-CD  - Filed October 22, 2014**

_____

The Defendant, Caleb Lawrence Mullins, pleaded guilty to second degree murder, theft of property, and tampering with evidence.  The trial court sentenced him to serve an effective sentence of thirty-seven years in the Tennessee Department of Correction.  On appeal, the Defendant contends that the trial court misapplied one enhancement factor and two consecutive sentencing factors.  After a thorough review of the record and the applicable authorities, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which ALAN E. GLENN, and ROBERT L. HOLLOWAY, JR., JJ., joined.

Gregory D. Gookin, Jackson, Tennessee, for the appellant, Caleb Lawrence Mullins.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; James G. Woodall, District Attorney General; and Brian M. Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the murder of the victim, Karen Mullins.  A Madison County grand jury indicted the Defendant for first degree murder, felony murder, theft of property, and tampering with evidence.  The Defendant entered a plea of guilt to second degree murder, theft of property, and tampering with evidence.  At the guilty plea hearing, the State announced the factual basis underlying the guilty pleas as follows:

[I]n Count 1 the State would show that on or about November the 10th of 2012 while here in Madison County that [the Defendant] did knowingly and unlawfully kill Karen Mullins. In Count 3 the State would show that on that same day, November the 10th of 2012, while here in Madison County that the [D]efendant did knowingly obtain or exercise control over property equal to or over the value of $10,000 without the effective consent of the owner, Karen Mullins, with the intent to deprive her of that property. In Count 4 on that same day, November the 10th of 2012, while here in Madison County, [the Defendant], knowing an investigation or official proceeding was pending or in progress did alter, destroy or conceal any record, document of thing with intent to impair it's verity, legibility or availability as evidence against him in an investigation or official proceeding.

If Your Honor please, this was a murder that took place on November the 10th although the Jackson Police Department and police officers weren't aware of it until November the 11th. There they received a call requesting that a welfare check be done on Karen Mullins. She was a resident at 21 Copper Ridge Cove here in Jackson, Madison County. When officers made entry into her house they did find her dead on her kitchen floor apparently killed by multiple stab wounds. In the course of the investigation they learned that she did not live there alone at the time; that she was living with her nephew, [the Defendant], and that the relationship between [the Defendant] and the victim was that of nephew and aunt.

Once the investigators learned that [the Defendant] was living at that residence they also noted that he was not there. They also noted that [the victim's] vehicle, a 2011 Toyota Rav 4 valued at approximately $20,000 was also missing along with some personal items related to [the Defendant] from that house. The investigation later determined that [the Defendant] after killing his aunt took her vehicle. That's the Theft of Property over $10,000, that $20,000 vehicle of her's. He took that along with her ATM debit card and used that on the way traveling from Jackson, Tennessee to Louisville, Kentucky. The [D]efendant is originally from Louisville, Kentucky and was a resident of Louisville, Kentucky.

The proof would show that the [D]efendant was living in Louisville, Kentucky up until about two months prior to this murder. There was an arrangement made by his family that he leave Louisville, Kentucky and come to live here in Jackson with his aunt, Karen Mullins, and he ended up living here for about two months. The proof would show that he was unhappy about

2

living here and that he missed – I believe he had some friends as well as a girlfriend and a child in Louisville and had multiple requests stating that he wanted to go back to Louisville. That's where investigators found him was in Louisville.

In Louisville he was apprehended. He was detained there and investigators from the Jackson Police Department, [], actually went and spoke to the [the Defendant].

I will say for the record that Investigator Aubrey Richardson is in the courtroom. He took the statement from the [D]efendant in which the [D]efendant confessed to killing his aunt. He stated that they had gotten into an argument. This involved the [D]efendant using drugs and also doing some things that [the victim] simply didn't approve of in the house. [The Defendant] stated that during the course of that argument that he became very angry with her and while they were in the kitchen he took a knife from a kitchen drawer and proceeded to stab her.

According to the medical examiner, [the victim] was stabbed somewhere between 33 and 38 times and that was her cause of death. Manner of death was homicide and cause of death was multiple stab wounds. Of course, she bled to death. She was not found until about 24 hours after her death, so she had been dead for quite sometime.

The State would shows that the [D]efendant did knowingly and unlawfully kill his aunt, Karen Mullins, as I said by the use of a knife. [The Defendant] also indicated in that statement that he had taken the knife and he had disposed of it in the Camilla Trace Apartments also located here in Jackson, Madison County. He confessed that to investigators. The investigators were able to go to Camilla Trace Apartments and did recover that knife along with some shoes and I believe a shirt. The shoes that [the Defendant] was wearing at the time left some shoe prints in the kitchen. There was some shoe prints as well as shirt that [the Defendant] was wearing and the clothing [the Defendant] was wearing that became blood stained.

Based upon this evidence, the trial court accepted the Defendant's guilty pleas.

At the subsequently held sentencing hearing, the parties presented the following evidence: The State offered the presentence report and a victim impact statement, both of which the trial court admitted into evidence. Sharon Mullins, the Defendant's aunt and the

3

victim's twin sister, testified that the impact of her sister's death had been very traumatic for her family and had presented a tremendous hardship for them. She stated that she had forgiven the Defendant, as her sister would have done. Ms. Mullins testified that the Defendant had moved in with the victim at Ms. Mullins's suggestion to give the Defendant a "fresh start" and allow him to graduate. Ms. Mullins said her family wanted to help the Defendant by putting him in a new environment away from any negative influences in Louisville.

Isaiah Mullins, Jr., testified that he was the Defendant's grandfather and the victim's father. Mr. Mullins said he had been attending weekly therapy sessions since his daughter's death to help him with his grief. He stated that his therapy would continue for two years. Mr. Mullins testified that he felt that the Defendant's crime was "cruel, heinous, atrocious and brutally done" and that the number of stab wounds and the tragic circumstances of her death kept him awake at night. Mr. Mullins asked that the Defendant be sentenced to no less than thirty-four years for his crime.

After considering this evidence, the trial court stated that the Defendant was a Range I, standard offender. The trial court found three enhancement factors applicable: enhancement factor (5), that the Defendant treated, or allowed the victim to be treated, with exceptional cruelty during the commission of the offense; (8) that the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; and (9) that the Defendant possessed or employed a deadly weapon during the commission of the offense. T.C.A. § 40-35-114 (5), (8), (9) (2014). The trial court applied two mitigating factors: (10) that the Defendant assisted the authorities in locating or recovering any property or person involved in the crime; and (13) that the Defendant took responsibility for the crime. T.C.A. § 40-35-113(10), (13) (2014). The trial court gave "slight" weight to those mitigating factors.

The trial court sentenced the Defendant to twenty-five years at 100 percent for the second degree murder conviction, consecutive to a six-year sentence at 30 percent for theft of property convictions and a six-year sentence at 30 percent for the tampering with evidence conviction for a total effective sentence of thirty-seven years. The trial court stated that it was ordering the sentences to be served consecutively based on consecutive sentencing factor (4), that the Defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high; and (6), that the Defendant was being sentenced for an offense committed while on probation. T.C.A. § 40-35-115(4), (6) (2014). It is from these judgments that the Defendant now appeals.

## II. Analysis

4

On appeal, the Defendant contends that the trial court erred when it sentenced him because it misapplied enhancement factor (8), that the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community, and because the trial court erred when it applied the consecutive sentencing factors. The State counters that the record supports the trial court's sentencing determinations. We agree with the State.

In *State v. Bise*, the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id*. at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id*. at 707.

Our Supreme Court extended the *Bise* standard to appellate review of the manner of service of the sentence and consecutive sentencing. The Court explicitly held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). In *State v. Pollard*, the Court held, "the appropriate standard of appellate review for consecutive sentencing is abuse of discretion accompanied by a presumption of reasonableness." *State v. James Allen Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013). We also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and

5

characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2010).

## A. Application of Enhancement Factor (8)

The Defendant asserts that the trial court improperly applied enhancement factor (8), that the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community. T.C.A. 40-35-114 (8). In support of his argument, the Defendant cites *State v. Hayes*, 899 S.W.2d 175 (Tenn. Crim. App. 1995) for the proposition that "a trial court is not to consider the fact that a defendant committed the instant offenses while on probation" when applying this factor. The Defendant contends that, rather, a trial court must find a previous history of unwillingness to comply with probation to apply this factor. The State responds that the trial court's application of enhancement factor (8) was not inconsistent with the purposes and principles of sentencing.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (2014).

Although the trial court should also consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. *See* T.C.A. § 40-35-114 (2014); *see also Bise*, 380 S.W.3d at 699 n.33, 704; *Carter*, 254 S.W.3d at 343. We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound

discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id*. at 343. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate Courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.

We agree with the Defendant that the instant offense may not be used as evidence of a previous unwillingness to comply with probation as contemplated by enhancement factor (8). *Hayes*, 899 S.W.2d at 185-186 (stating that the commission of the offense for which a defendant is being sentenced should not be used to make factor (8) applicable in sentencing.) Thus, we hold that the trial court erred when it applied enhancement factor (8) when sentencing the Defendant. However, as we have previously stated, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld. " *Bise*, 380 S.W.3d at 706. The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the Sentencing Act and its findings are adequately supported by the record. T.C.A. § 40-35-210, Sentencing Comm'n Cmts.

In the instant case, the trial court applied three enhancement factors, enhancement factor (5), that the Defendant treated, or allowed the victim to be treated, with exceptional cruelty during the commission of the offense; (8) that the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; and (9) that the Defendant possessed or employed a deadly weapon during the commission of the offense. T.C.A. § 40-35-114 (5), (8), (9) (2014). The trial court gave "great weight" to factor (8), but it also focused heavily on factor (5) and gave "great weight" to the "brutal" circumstances of the victim's death, specifically that the Defendant stabbed her thirty-three to thirty-eight times. The trial court went on to address factor (9), and the fact that the Defendant employed a deadly weapon, a kitchen knife, to stab the victim, to which it applied "moderate" weight. We conclude that, despite the trial court's misapplication of enhancement factor (8), the evidence supports the trial court's application of enhancement factors (5) and (9), and thus, the within-range sentence imposed should be upheld. *See Bise*, 380 S.W.3d at 706 (concluding that if there are "other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed

by the trial court within the appropriate range should be upheld.")  The Defendant is not entitled to relief on this issue.

## B.  Consecutive Sentencing

The Defendant next contends that the trial court erred when it ordered consecutive sentencing.  The Defendant argues that he took full responsibility for his actions and pleaded guilty to the offenses and that the trial court erred when it placed no weight on him so doing.  The State counters that the imposition of consecutive sentencing was justly deserved based on the seriousness of the offense and that the trial court correctly found that the Defendant was a dangerous offender.  T.C.A. 40-35-115(4) (2014).  We agree with the State.

Consecutive sentencing is a matter addressed to the sound discretion of the trial court. *State v. James*, 688 S.W.2d 463, 465 (Tenn. Crim. App. 1984).  A trial court may order multiple sentences to run consecutively if it finds, by a preponderance of the evidence, that at least one of the seven statutory factors exists.  T.C.A. § 40-35-115(b)(1)-(7) (2014).  In addition to these criteria, consecutive sentencing is subject to the general sentencing principle that the length of a sentence should be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed."  T.C.A. § 40-35-102(1), -103(2) (2014); *see also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).

In this case, the trial court found, "[t]he [D]efendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high."  T.C.A. § 40-35-115(4) (2014).  Our Supreme Court has noted that the "dangerous offender" category is the hardest and most subjective to apply.  *State v. Lane*, 3 S.W.3d 456, 460 (Tenn. 1999).  Consequently, our Supreme Court in *State v. Wilkerson* held that "particular facts" must show the following in order to base consecutive sentencing on subsection 115(b)(4): (1) that an extended sentence is necessary to protect the public against further criminal conduct by the defendant; and (2) that the consecutive sentences reasonably relate to the severity of the offenses committed.  905 S.W.2d 933, 938-39 (Tenn. 1995); *see State v. Robinson*, 146 S.W.3d 469, 524 (Tenn. 2004).

In discussing the applicability of the "dangerous offender" category to the Defendant, the trial court stated the following:

> [T]he Court finds as far as consecutive sentencing that this [D]efendant is a dangerous offender whose behavior indicates little or no regard for human life.  He had no hesitation about committing a crime in which the risk to human life is high.  I find that to be appropriate in this case.

8

Also as part of that factor, the Court finds the circumstances surrounding the commission of these offenses is aggravated. Again, the reason it's aggravated is because, you know, he didn't have to stab her 33 to 38 times. []. So, the commission of the offense is certainly aggravated.

. . . .

Also the Court finds that the aggregate length of the sentence reasonably relates to the offenses for which the [D]efendant stands convicted. You know, again, I consider the people that knew or know [the Defendant] the best. They are all recommending to me the maximum sentence. They are recommending 25 years, plus six years, plus six years. [].

So, you know, based upon all of the factors I've talked about and one factor I haven't talked about and [] this is where the rubber [] meets the road, [the Defendant] has expressed no remorse for anything he has done. []

. . . .

So, given all of these circumstances, I find that it is important that [the Defendant] be removed from society for as long as possible and for that reason I'm going to order all of these sentences to be served consecutive[ly]. [].

Again, the Court finds that the aggregate length of these sentences reasonably relates to the grief and the harm and the pain that he has caused to so many people who really love him and care for him[.]

We conclude that the evidence supports the trial court's imposition of consecutive sentences. The facts recited at the guilty plea hearing show that the Defendant was living with an aunt, the victim, in Jackson, Tennessee. Following an argument between the two, the Defendant stabbed the victim to death with a kitchen knife. The medical examiner's report indicated that she died from multiple stab wounds, between thirty-three and thirty-eight. The Defendant then left her alone to die in her home, where she was not discovered for 24 hours, and he fled to another state. This evidence supports the trial court's finding that the Defendant is a dangerous offender, and the fact that the Defendant pleaded guilty to this crime and took responsibility for his actions does not negate the heinous nature of the killing. Furthermore, the nature of this crime supports the trial court's finding that consecutive sentencing is necessary to protect the public and that the sentence is reasonably related to the seriousness of the offenses committed. The Defendant is not entitled to relief on this issue.

9

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE